ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff
LAWRENCE BRADFORD, on behalf
of himself and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE BRADFORD, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>ANTHEM, INC.; ANTHEM UM SERVICES, INC.,<br><br>     Defendants.<br><br>_____ | Case No.: 2:17-cv-5098 AB (KSx)<br>Assigned to Hon. Andre Birotte, Jr. D-7B<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT S. GIANELLI**<br><br>DATE: January 4, 2019<br>TIME: 10:00 A.M.<br>PLACE: Courtroom 7B<br><br>Complaint Filed: July 11, 2017 |

1

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 4, 2019 at 10:00 a.m. in Courtroom 7B of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiff will move the Court for an order certifying the class and preliminarily approving the proposed settlement, attached as Exhibit 1 to the Declaration of Robert S. Gianelli, submitted herewith, approving issuance of notice to the class, and setting a hearing for final approval of the settlement.

This motion is based on this notice, the attached memorandum of points and authorities, the Declaration of Robert S. Gianelli and the attached settlement agreement and exhibits thereto, the Court's files and records in this action, and upon such other evidence and argument as may be presented at the hearing.

DATED:  November 26, 2018          GIANELLI & MORRIS


                              By:    /s/ Adrian J. Barrio           _
                                     ROBERT S. GIANELLI
                                     JOSHUA S. DAVIS
                                     ADRIAN J. BARRIO
                                        Attorneys for Plaintiff

# TABLE OF CONTENTS

*Pages*

MEMORANDUM OF POINTS AND AUTHORITIES.................................. 1

I.   INTRODUCTION................................................................ 1

II.  STATEMENT OF FACTS...................................................... 2

    A.   Investigation, research, and analysis in the case before the
        settlement................................................................ 2

    B.   Mediation and negotiation of the settlement................................. 5

    C.   Terms of the settlement................................................ 5

        1.   Relief for class members...................................... 5

        2.   Released Claims............................................. 6

        3.   Notice..................................................... 7

        4.   Attorneys fees.............................................. 7

III. ARGUMENT................................................................. 7

    A.   The proposed class meets the requirements of Rule 23................. 7

        1.   Numerosity................................................ 9

        2.   Commonality.............................................. 9

        3.   Typicality................................................. 9

        4.   Adequacy................................................. 10

        5.   Rule 23(b) requirements...................................... 11

            a.   Rule 23(b)(1)........................................ 11

            b.   Rule 23(b)(2)........................................ 12

    B.   The proposed settlement warrants preliminary approval............. 13

        1.   The settlement is the product of good faith, informed,
            arm's-length negotiations between experienced counsel.... 14

        2.   The settlement obtains the relief sought by the class
            demonstrating beyond question that the settlement is
            within the range of reasonableness........................... 15

        3.   No preferential treatment for the class representative......... 15

        4.   The views of experienced counsel........................... 16

///

i

**TABLE OF CONTENTS CON'T.**

*Pages*

C.    PROPOSED SCHEDULE............................................................ 16

IV.   CONCLUSION.......................................................................... 17

# TABLE OF AUTHORITIES

*Pages*

*Armstrong v. Davis*....................................................................................... 10
275 F.3d 849 (9th Cir. 2001)

*Baby Neal for and by Kanter v. Casey*............................................................. 12
43 F.3d 48 (3d Cir. 1994)

*Bublitz v. E.I. Du Pont de Nemours and Co.*.................................................... 9
202 F.R.D. 251 (S.D. Iowa 2001)

*Class Plaintiffs v. City of Seattle*.................................................................... 13
955 F.2d 1268 (9th Cir. 1992)

*Des Roches v. California Physicians' Service*................................................... 8
320 F.R.D. 486 (N.D. Cal. 2017)

*Escalante v. California Physicians' Service*...................................................... ***passim***
309 F.R.D. 612 (C.D. Cal. 2015)

*Weiss v. New York Hospital*............................................................................. 8
745 F.2d 786 (3d Cir. 1984)

*Hanlon v. Chrysler Corp.*................................................................................. 14
150 F.3d 1011 (9th Cir. 1998)

*Horn v. Wholesale Grocers, Inc.*...................................................................... 8
555 F.2d 270 (10th Cir. 1977)

*In re Tableware Antitrust* Litig....................................................................... 14
484 F. Supp.2d 1078 (N.D.Cal.2007)

*Jackson v. Danberg*......................................................................................... 9
240 F.R.D. 145 (D. Del. 2007)

*Johnson v. California*...................................................................................... 10
543 U.S. 499 (2005)

*Martial v. Coronet Ins. Co.*............................................................................. 8
880 F.2d 954 (7th Cir. 1989)

*Mazza v. Am. Honda Motor Co.*....................................................................... 9
666 F.3d 581 (9th Cir. 2012)

*McMillon v. State of Hawaii*............................................................................ 8
261 F.R.D. 536 (D. Haw. 2009)

*Moeller v. Taco Bell Corporation*.................................................................... 8
220 F.R.D. 604 (N.D. Cal. 2004)

*Officers for Justice v. Civil Serv. Comm'n.*...................................................... 2, 13
688 F.2d 615 (9th Cir. 1982)

# TABLE OF AUTHORITIES

*Pages*

*Otey v. CrowdFlower, Inc.*..........................................................................   14
   2014 WL 1477630, *10 (N.D. Cal. 2014)

*Parra v. Bashas', Inc.*...............................................................................   9
   536 F.3d 975 (9th Cir. 2008)

*Parsons v. Ryan*........................................................................................   9, 12
   754 F.3d 657 (9th Cir. 2014)

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term
Disability Income Plan*...............................................................................   8
   85 F.3d 455 (9th Cir. 1996)

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*...   4
   770 F.3d 1282 (9th Cir. 2014)

*Staton v. Boeing Co.*..................................................................................   10
   327 F.3d 938 (9th Cir. 2003)

*Wal-Mart Stores, Inc. v. Dukes*................................................................   8
   564 U.S. 338 (2011)

*Weinberger v. Thornton*.............................................................................   10
   114 F.R.D. 599 (S.D. Cal. 1986)

*Wit v. United Behavioral Health*................................................................   8
   317 F.R.D. 106 (N.D. Cal. 2016)

*Z.D. ex rel. J.D. v. Group Health Cooperative*...........................................   12
   2012 WL 1977962 (W.D. Wash. June 1, 2012)

*Zinser v. Accufix Research Institute, Inc.*...................................................   11
   253 F.3d 1180 (9th Cir. 2001)

*///*

# TABLE OF AUTHORITIES

*Pages*

### *Statutes*

Code of Federal Regulations

      Title 29 Section 1132.................................................................... 2

      Title 29 Section 2560.503-1....................................................... 3, 12

Federal Rule of Civil Procedures

      Rule 23.................................................................................... *passim*

### *Treatises*

*Newberg on Class Actions*................................................................. 1, 13
    § 13:12 (5th ed. 2016)

*Manual for Complex Litigation*........................................................ 1, 13
    (4th ed. 2004) § 21.632

### *Miscellaneous*

ERISA............................................................................................. *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Lawrence Bradford ("Bradford") and defendants Anthem, Inc. and Anthem UM Services, Inc. (jointly, "Anthem" or "Defendants") have agreed to settle this case on the terms set forth in the Settlement Agreement ("Agreement") attached as Exhibit 1 to the Declaration of Robert S. Gianelli ("Gianelli Decl."), filed herewith.

This case concerns Anthem's categorical denial of two-level cervical artificial disc replacement surgery ("2C-ADR") as "investigational" and excluded from coverage during a three-year period—from August of 2013 when the FDA first approved the surgery as safe and effective to August of 2016 when Anthem changed its position and began covering the surgery.

Bradford respectfully requests the Court to preliminarily approve the proposed settlement which provides substantially all of the relief requested in the Complaint. For all persons who were denied 2C-ADR during the relevant time period and paid out-of-pocket for it, they can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other sources. If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the class member for the out-of-pocket expenses up to a maximum of $35,000. For those who have not yet undergone 2C-ADR, and are currently covered by Anthem, they can submit their requests for approval of the surgery pursuant to the terms of their existing Anthem contracts.

At the preliminary approval stage, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy so that notice of the settlement may be given to the class and a fairness hearing may be scheduled to make a final determination about the settlement's fairness. *Newberg on Class Actions*, § 13:12 (5th ed. 2016); *Manual for Complex Litigation* (4th ed. 2004) § 21.632. In so doing, the Court simply reviews the settlement to determine that it is

1

not collusive and, taken as a whole, is fair, reasonable, and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).

The proposed settlement easily meets this standard. It is the product of extensive, arm's-length negotiations between the parties, was assisted by an experienced, well-respected mediator, and will fairly resolve this case. Indeed, the settlement achieves substantially all of the relief sought in the Complaint so a victory at trial for the class would provide no additional benefit.

Plaintiff therefore respectfully requests that the Court enter the [Proposed] Order Granting Motion for Preliminary Approval of Class Action Settlement, direct issuance of Notice of Proposed Settlement of Class Action and Final Approval Hearing to the Identified Class Members, and set a Final Approval Hearing to consider whether to grant final approval of the settlement, and the motion by Plaintiff and class counsel for an award of attorneys fees and expenses and an incentive award for the class representative.

## II.   STATEMENT OF FACTS

### A.   Investigation, research, and analysis in the case before the settlement.

On July 11, 2017, Bradford filed this ERISA class action case against Anthem, Inc. and Anthem UM Services, Inc. seeking declaratory and injunctive relief on behalf of the class pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) and an individual claim for benefits under 29 U.S.C. § 1132(a)(1)(B). (Dkt. 1.)

The Complaint alleges that: Defendants categorically deny all requests for two-level cervical artificial disc replacement surgery ("2C-ADR") on the basis that the procedure is "investigational" under its internal guideline, SURG.00055, a written Medical Policy regarding 2C-ADR (Dkt. 1, ¶¶ 13-14); Defendants denied Bradford's request for lumbar ADR on this basis (*id.*, ¶¶ 16-20.); and, contrary to

Defendants' position, 2C-ADR is safe and effective when performed with a device approved by the United States Food and Drug Administration ("FDA"). (*Id.*, ¶¶ 8-12.)

The Complaint also alleges that Defendants violated ERISA claim procedures found in 29 C.F.R. § 2560.503-1 by, *inter alia*, failing to state the specific reason or reasons for denying claims in form denial letters and by failing to provide the specific plan provisions on which the determinations were based.

The primary relief requested by Plaintiff is an injunction requiring Anthem to provide notice to members who have had requests for 2C-ADR surgery denied, to re-review the denied claims under the proper standard, and make payment where appropriate. (*Id.* at ¶ 64.) Plaintiff also seeks an injunction "precluding Defendants from relying on specific reasons or specific policy provisions not recited in their form denial letters." (*Id.*)

Defendants' primary defense as to the class allegations was that it revised SURG.00055 on August 18, 2016, shortly after Bradford's claim for 2C-ADR was denied. The revised policy no longer categorically declared 2C-ADR to be "investigational" and "not medically necessary"; it states, instead, "that implantation of a Mobi-C Cervical Disc Prosthesis ("Mobi-C") at two contiguous levels [is] considered medically necessary when certain individual criteria are met." (Dkt. 26 at 3.)

Defendants further contended that SURG.00055, the Medical Policy in effect during the class period, was justified because there was insufficient evidence of the long-term health effects of 2C-ADR at the time of FDA approval.

Upon the filing of the Complaint, Defendants filed a Rule 12(b)(6) motion to dismiss on the grounds that Defendant Anthem, Inc. was a mere "parent company" with no involvement in the development and implementation of SURG.00055, and therefore was an improper defendant with respect to Plaintiff's claim for denial of benefits under ERISA § 1132(a)(1)(B) and for equitable relief under § 1132(a)(3).

3

Plaintiff opposed the motion, arguing that Anthem, Inc. was a *de facto* plan administrator under the Ninth Circuit's decision in *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.* 770 F.3d 1282 (9th Cir. 2014). The Court agreed with Plaintiff's position and denied the motion to dismiss.

Following the resolution of Defendants' pleading challenge, Plaintiff served Defendants with a set of comprehensive production requests, seeking documentary information supportive of the denial of benefits and breach of fiduciary duty claims asserted in the Complaint (both of which are class claims). (*See* Gianelli Decl. at ¶ 7.) Among other things, Plaintiff sought the relevant plan documents; all versions of SURG.00055 as it has existed during the class period; all documents and Electronically Stored Information ("ESI") showing how SURG.00055 was developed, researched, written, voted on, decided upon, approved, or implemented; all documents and ESI showing Defendants' processes for reviewing or determining 2C-ADR claims; form letters or template language relied upon by Defendants to deny 2C-ADR claims during the class period; the class data (number of denials, etc.); and the medical evidence supportive of Defendants' contention that 2C-ADR is "investigational" and "not medically necessary." (Gianelli Decl. at ¶ 7.)

In or about February of 2018, Plaintiff served special interrogatories requesting factual information concerning the various class certification elements and Defendants' development and implementation of SURG.00055. (Gianelli Decl. at ¶ 8.)

On or about March 5, 2018, Defendants responded to Plaintiff's production requests. Defendants asserted objections and took the position that they were under no obligation to produce any responsive documents beyond the "administrative record." Plaintiff initiated meet and confer efforts but the parties were unable to resolve their dispute. Accordingly, on April 18, 2018, Plaintiff sent a lengthy Joint Stipulation to Defendants setting forth Plaintiff's position that the "administrative record" limitation does not apply, and addressing each of Defendants' remaining

4

objections to the production requests. (Gianelli Decl. at ¶ 9.)

The Joint Stipulation was not filed. In or about late April/early May of 2018, the parties agreed to table their discovery dispute with respect to the production requests, and to extend the time for responding to the special interrogatories, while they engaged in settlement negotiations. As part of these negotiations, the parties agreed to informally exchange information, including information pertinent to the class certification elements. (Gianelli Decl. at ¶ 10.)

### B.  Mediation and negotiation of the settlement.

The parties attended a mediation on May 30, 2018 before an experienced and well-respected mediator, Edwin Oster, Esq. of Judicate West. Following the mediation, the parties engaged in extensive negotiations through the mediator. (Gianelli Decl. at ¶ 16.)

Prior to the mediation, Bradford's counsel conducted their own investigation and evaluation of the relevant law and facts necessary to assess the strengths and weaknesses of the case. Class Counsel's evaluation was enabled by their experience in handling similar cases and through consultation with experts regarding 2C-ADR. (Gianelli Decl. at ¶ 17.)

The informed view of experienced class counsel is that the proposed settlement is fair, reasonable, and adequate and easily meets the criteria for preliminary approval. (Gianelli Decl. at ¶ 18 .) The settlement achieves substantially all of the relief requested in the complaint and trial would afford no further benefit. (*Id*.)

### C.  Terms of the settlement.

#### 1.  Relief for class members.

All class members who have paid out-of-pocket for 2C-ADR can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other insurance, Medicare, or other reimbursement sources for which the class member owes no reimbursement obligation. If Anthem determines that the claim for

reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the Class Member for the out-of-pocket expenses up to a maximum of $35,000. (Ex. 1. at ¶ 10.)

For class members who have not yet undergone 2C-ADR, and are currently covered by Anthem, they can submit their requests for approval for the surgery pursuant to the terms of their existing Anthem contracts. Class members who have not yet received the surgery and are no longer covered by Anthem are ineligible for the surgery through Anthem. (Ex. 1 at ¶ 11.) However, they release no claims and are free to make claim with any health plan they now have or will have in the future. (*Id*. *See also* Ex. 1 at ¶ 8(p).)

If Anthem denies a claim for reimbursement or a request for surgery approval under the new guidelines, Anthem will comply with the adverse benefit determination and appeal provisions of ERISA. (Ex. 1 at ¶¶ 10-11.)

## 2. Released Claims.

"Released Claims" means any and all claims and causes of action, whether direct, representative, class, or individual in nature regarding (1) any denial of a claim for 2C-ADR by Anthem under ERISA-governed plans, either fully insured or self-insured, that occurred at any time from August 24, 2013 through August 17, 2016 under former Medical Policy, SURG.00055, and/or (2) the appropriateness of Anthem's current Clinical UM Guideline for 2C-ADR, CG-SURG-60 effective November 2, 2017, attached hereto as Exhibit D (hereinafter "CG-SURG-60"), unless Anthem makes future material changes to that Clinical UM Guideline after Final Approval. Released Claims do not include any claims for reimbursement or claims for re-review, as described below, that are denied after Final Approval for failure to meet the criteria of CG-SURG-60.  Released Claims also do not include any claim by a Class Member who did not undergo 2C-ADR and is not currently covered by Anthem. (Ex. 1 at ¶ 8(p).)

///

6

### 3. Notice.

The Parties agree that no later than 28 days after entry of the Preliminary Approval Order, a Settlement Administrator will mail notice of the proposed settlement to all class members as identified from Anthem's data search. (Ex. 1 at ¶ 18.)

### 4. Attorneys fees.

If the Court preliminarily approves the settlement, Class Counsel will move for an award of attorneys' fees and costs. Anthem has agreed to pay class counsel no more than $468,000 in attorney fees and $6,510.45 in costs, to Court approval. (Ex. 1 at ¶¶ 14.) Bradford will also apply for an incentive award in the amount of $15,000 for his work as class representative in this case. (*Id*.)

## III.   ARGUMENT

### A.   The proposed class meets the requirements of Rule 23.

Bradford seeks certification of the following settlement class:

> All persons who had claims for two-level cervical artificial disc surgery denied by Anthem pursuant to Medical Policy SURG.00055 under an ERISA-governed plan, either fully insured or self-insured, at any time from August 24, 2013 through August 17, 2016.

To maintain a class action under Rule 23, the requirements of Rule 23(a) must first be established. Under Rule 23(a), a class may be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition to the Rule 23(a) requirements, at least one of the three subsections of Rule 23(b) must be met.

///

Here, Bradford is seeking to certify the proposed class under Rule 23(b)(1) and Rule 23(b)(2).[1]

### 1.   Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. *Moeller v. Taco Bell Corporation*, 220 F.R.D. 604, 608 (N.D. Cal. 2004). Plaintiffs are not required to identify each and every potential member of the class or specify the exact number of potential class members. *Martial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Instead, plaintiffs need only provide a properly supported estimate. *Id*.

Anthem reports that there are 198 persons who meet the class definition. This estimate easily meets the numerosity threshold for an injunctive relief class. *Escalante v. California Physicians' Service*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (numerosity satisfied "even presuming a class of 19" due to the nature of relief sought). *See also Weiss v. New York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984); *Horn v. Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977); *McMillon v. State of Hawaii,* 261 F.R.D. 536, 543 (D. Haw. 2009) (finding the numerosity

---

[1] Certification is not being sought under Rule 23(b)(3) because no class member is "*entitled* to an individualized award of monetary damages" under the terms of the proposed settlement agreement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011). Instead, Anthem will reimburse the class member for the out-of-pocket expenses up to a maximum of $35,000 *if* Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline. Thus, any monetary relief obtained by the class members is entirely conditional and incidental. The claim procedure contemplated by the settlement is akin to a reprocessing order commonly made in Rule 23(b)(2) class actions. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) ("[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."); *Des Roches v. California Physicians' Service*, 320 F.R.D. 486, 508 (N.D. Cal. 2017) (in certifying ERISA class under FRCP 23(b)(2) held that under *Saffle*, the appropriate "final" remedy for class members with denied claims was to require insurer to reprocess benefit denials under revised guidelines); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 136-136 (N.D. Cal. 2016) (in certifying ERISA class under FRCP 23(b)(2) held injunctive relief that required defendant to re-process previously denied requests under a correct standard was appropriate relief).

requirement satisfied where the putative class consisted of 10 identifiable members, as well as future, unidentified members); *Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007) (16 members enough); *Bublitz v. E.I. Du Pont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (17 members enough).

### 2.   Commonality

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. Rule 23 does not require that all questions of law and fact be common to all class members. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008). In fact, only one question of law or fact must be common to the proposed class. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, the propriety of Anthem's denial of 2C-ADR during the relevant time period is unquestionably a common issue. In *Escalante v. California Physicians Service dba Anthem of California*, 309 F.R.D. 612, 618 (C.D. Cal. 2015), the court addressed a health plan's refusal to cover a similar surgery, lumbar ADR, and held that the commonality requirement was satisfied. The *Escalante* court's language and reasoning is fully applicable here:

> The Court concludes that there are common questions that have common answers relevant to the resolution of this case. In particular, Plaintiff's first question would result in an answer that goes to the heart of the resolution of Plaintiff's claims. Plaintiff is challenging Defendant's uniform policy of categorically denying coverage for lumbar ADR procedures.

Because Bradford is challenging Anthem's categorical denial of 2C-ADR during the relevant time period as "investigational," there is a common question that has a common answer. Thus, the commonality element is satisfied.

### 3.   Typicality.

Rule 23(a)(4) requires that the claims of the named plaintiff be typical of those of the class. The purpose of the typicality requirement is to "assure[ ] that the

interest of the named representatives align with those of the class." *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). Where, as here, "the challenged conduct is a policy or practice that affects all class members," the Ninth Circuit does "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 868-869 (9th Cir. 2001)*, abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-505 (2005).

In this case, "the injuries [of the class members] are identical." *Armstrong*, *supra*, 275 F.3d at 869. Bradford and all the proposed class members have suffered "the same or similar injury": they have been denied 2C-ADR for their neck conditions. *Escalante*, *supra*, 309 F.R.D. at 619. This common injury springs from the same "uniform course of conduct," namely, Anthem's categorical exclusion of 2C-ADR from coverage.  The typicality requirement is therefore satisfied.

### 4.     Adequacy.

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. This prerequisite is primarily concerned with "the competency of class counsel and conflicts of interest." *Escalante*, *supra*, 309 F.R.D. at 619 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982). Resolution of two questions determines whether this requirement is met: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Escalante*, *supra*, 309 F.R.D. at 619. *See also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

As set forth above, Bradford's interests are co-extensive and do not conflict with the proposed class members' interests, and are typical of the claims of the other class members. Bradford has an interest in vigorously prosecuting this case on behalf of the proposed class because he seeks benefits for 2C-ADR. This explicitly

advances the interests of the class.

Likewise, class counsel will vigorously prosecute this action on behalf of the class. Class counsel has significant experience in insurance litigation and class litigation. (Gianelli Decl. at ¶¶ 2-4.) Gianelli & Morris has successfully prosecuted numerous insurance class actions and, in particular, health insurance class actions alleging violations of statutory and/or contractual law. (*Id.*)

### 5.  Rule 23(b) requirements.

The next determination is whether this case fits one of the three subsections of Rule 23(b). The two subsections at issue are subsections (b)(1) and (b)(2).

### a.  Rule 23(b)(1)

Rule 23(b)(1) is divided into two subsections, Rule 23(b)(1)(A) and 23(b)(1)(B). Certification is proper herein under both subsections.

A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." As explained in *Escalante*, "[t]his subsection covers actions where the party is obliged by law to treat the members of the class alike or where the party must treat all alike as a matter of practical necessity." *Escalante*, *supra*, 309 F.R.D. at 619-620 (internal quotations omitted). *See also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (the phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct").

Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). ERISA requires that, where appropriate, plan

11

provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find that the terms of Blue Shield's EOCs "require[ ] Blue Shield to act in a certain fashion, ERISA would require [Blue Shield] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Z.D. ex rel. J.D. v. Group Health Cooperative*, 2012 WL 1977962 at *7 (W.D. Wash. June 1, 2012).

### b.    Rule 23(b)(2).

A class is proper under Rule 23(b)(2) if the party opposing the class has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …" Fed.R.Civ. P. 23(b)(2). The key to certification under Rule 23(b)(2) is establishing uniform, class-wide conduct on the part of the defendant. *Parsons*, *supra*, 754 F.3d at 688. This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class a whole." *Id.*; *See also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons*, *supra*, 754 F.3d at 688.

In this case, Plaintiff and the class members are all seeking declaratory and injunctive relief to remedy the same conduct on the part of Anthem: Anthem's uniform practice of improperly denying all requests and/or claims for 2C-ADR—an FDA-approved procedure—as "investigational." Anthem applies this categorical bar in all circumstances and to all members, regardless of the member's individual medical profile. All members were affected by Anthem's policy and practice in the same way: they were denied coverage for 2C-ADR.

///

12

### B.     The proposed settlement warrants preliminary approval.

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of a certified class action must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

Courts employ a two-step process in approving settlements under Rule 23(e). A settlement is preliminarily approved for the purpose of providing notice to class members and setting a final approval hearing date to make a final determination about the settlement's fairness. At the final approval hearing the court grants or denies final settlement approval after assessing the settlement's reasonableness and any objections raised. *Manual for Complex Litigation, supra,* § 21.632.

The preliminary approval step requires the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ." *Manual for Complex Litigation, supra,* § 21.632. At this preliminary-approval step, the Court must conduct a prima facie review of the relief provided by the settlement and the proposed notice to determine that notice should be sent to the Settlement class members. *Newberg on Class Actions*, § 13.13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to the class members and [to] hold a full-scale hearing as to its fairness.")

Preliminary approval of a settlement should be granted if the proposed settlement falls within the range of what could be found "fair, adequate and reasonable" so that notice may be given to the proposed class and a hearing for final approval can be scheduled. *Officers for Justice*, *supra*, 688 F.2d at 625. The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the

13

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). This is a minimal threshold:

> Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Tableware Antitrust* Litig., 484 F.Supp.2d 1078, 1079 (N.D.Cal.2007) (citation omitted).

*Otey v. CrowdFlower, Inc.*, 2014 WL 1477630, *10 (N.D. Cal. 2014).

Here, the proposed settlement satisfies the standard for preliminary approval, as there is no question that it was negotiated in good faith and presents a fair, reasonable, and adequate resolution of this certified class.

### 1.   The settlement is the product of good faith, informed, arm's-length negotiations between experienced counsel.

Bradford is represented by counsel who have extensive experience in the litigation of insurance class actions and have successfully prosecuted other class actions over policyholders' rights to health benefits. (Gianelli Decl. at ¶ 3.) Anthem's counsel is a firm that has expertise in health care matters and that regularly represents Anthem and other health plans.

Counsel engaged in extensive investigation regarding Anthem's bases for refusing to cover 2C-ADR, engaged in extensive investigation and research regarding the safety and effectiveness of 2C-ADR, and consulted with experts on 2C-ADR, the body of medical literature addressing it, and the FDA approval process. (Gianelli Decl. at ¶¶ 12-16.)

Following this work, the parties attended a mediation before an experienced mediator on May 30, 2018. (Gianelli Decl. at ¶ 11.) Following the mediation, the parties continued their negotiations through in person meetings and telephone conferences with the mediator. The negotiations were intense and at arms'-length

14

and resulted in a settlement that provides the class with the relief requested in the Complaint. *See* section III.B.2., *infra*.

Accordingly, the settlement reached in this matter represents the end-result of an adversarial process where the interests of the class were vigorously and fully represented by Class Counsel.

### 2. The settlement obtains the relief sought by the class demonstrating beyond question that the settlement is within the range of reasonableness.

This case was brought because Anthem denied all requests for 2C-ADR as "investigational" after the time the FDA approved the surgery as safe and effective. Bradford was denied the 2C-ADR for this reason. This case sought an injunction requiring Anthem to provide notice to members who have had requests for 2C-ADR surgery denied, to re-review the denied claims under the proper standard, and make payment where appropriate. (Dkt. 1 at ¶ 64.)

The proposed settlement effectively provides the relief requested. All class members who have paid out-of-pocket for 2C-ADR can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other insurance, Medicare, or other reimbursement sources for which the class member owes no reimbursement obligation. If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the Class Member for the out-of-pocket expenses up to a maximum of $35,000. (Ex. 1 at ¶ 10.)

For class members who have not yet undergone 2C-ADR, and are currently covered by Anthem, they can submit their requests for approval for the surgery pursuant to the terms of their existing Anthem contracts.  (Ex. 1 at ¶ 11.)

### 3. No preferential treatment for the class representative.

As part of the settlement, Bradford receives the same benefit as other class members. His request for reimbursement of expenses incurred for 2C-ADR will be submitted to Anthem for reimbursement under the revised Medical Policy that will

15

now cover 2C-ADR under appropriate eligibility criteria.

The proposed settlement also provides that Bradford will receive an incentive award of $15,000. (Ex. 1 at ¶ 14.) This is a reasonable amount given Bradford's efforts in pursuing the obtained relief for the class.

### 4. The views of experienced counsel.

Bradford's counsel are experienced in cases of this nature having certified and tried cases against health plans over their refusals to provide benefits. *Gallimore v. Kaiser Foundation Health Plan, Inc.*, Alameda Superior Court, Case No. RG12616206 (judgment obtained for class against California's largest health plan over its systematic denial of reconstructive surgery benefits); *Arce v. Kaiser Foundation Health Plan, Inc.*, Los Angeles Superior Court, Case No. BC388689 (recovery of benefits from health plan for class of autistic children); *Escalante v. California Physicians Service dba Blue Shield of California* (C.D. Cal.) Case No. 2:14-CV-3021 (reversal of health insurer's position on lumbar artificial disc replacement surgery). (Gianelli Decl., ¶ 3.)

It is the view of class counsel that the settlement is reasonable, fair, and adequate. (Gianelli Decl. at ¶ 18.) The Settlement should be preliminarily approved.

### C. PROPOSED SCHEDULE

Based on the foregoing, Bradford respectfully requests that the Court set the following schedule for the dissemination of the class notice and the setting of the final approval hearing in this case.

| Event Date | Event |
|---|---|
| 10 business days from the date of the Preliminary Approval Order | Anthem provides mailing data for Class Members to the Settlement Administrator |
| 28 days from the date of the Preliminary Approval Order | Class Counsel files a motion for an award of attorneys' fees and costs and class representative incentive award |

16

| 28 days from the date of the Preliminary Approval Order | The Administrator mails the notice of the proposed Settlement |
|---|---|
| 63 days from the date of the Preliminary Approval Order | Deadline for postmarking of exclusions, objections, and requests to be heard at the Final Approval Hearing |
| 73 days from the date of the Preliminary Approval Order | Class Counsel to file notice specifying those who have objected, together with a declaration of the Settlement Administrator |
| 28 days prior to the Final Approval Hearing | Class Counsel to file a motion for final approval |
| To be set by the Court, on or after April 12, 2019 | Final Approval Hearing |

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court certify the class for settlement purposes, appoint Gianelli & Morris as class counsel and Lawrence Bradford as the class representative, preliminarily approve the proposed settlement, direct that notice be sent to class members, and set a Final Approval Hearing.

DATED: November 26, 2018                    GIANELLI & MORRIS


                              By:    /s/ Adrian J. Barrio_____
                                     ROBERT S. GIANELLI
                                     JOSHUA S. DAVIS
                                     ADRIAN J. BARRIO
                                     Attorneys for Plaintiff