ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff
LAWRENCE BRADFORD, on behalf
of himself and all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE BRADFORD, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ANTHEM, INC.; ANTHEM UM SERVICES, INC.,<br><br>                    Defendants. | Case No.: 2:17-cv-5098 AB (KSx)<br>Assigned to Hon. Andre Birotte, Jr. D-7B<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES AND CLASS REPRESENTATIVE SERVICE AWARD**<br><br>Date:  May 17, 2019<br>Time:  10:00 a.m.<br>Dept:  7B<br><br>Complaint Filed: July 11, 2017 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 17, 2019 at 10:00 a.m. in Courtroom 7B of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiff will move the Court under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, and 29 U.S.C. section 1132(g)(1), for an order: (1) awarding attorney's fees in the amount of $468,000.00; (2) providing reimbursement for expenses incurred in litigating this action in the amount of $6,510.45; and (3) awarding a class representative incentive award in the amount of $15,000.

This motion is based on this notice, the attached memorandum of points and authorities; the Declarations of Robert S. Gianelli and Lawrence Bradford; the Court's files and records in this action; and upon such other matters as may be presented at the hearing of this motion.

DATED: February 20, 2019                    GIANELLI & MORRIS

By:   /s/ Robert S. Gianelli
ROBERT S. GIANELLI
JOSHUA S. DAVIS
ADRIAN J. BARRIO
Attorneys for Plaintiff

1

# TABLE OF CONTENTS

*Pages*

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.     INTRODUCTION..........................................................................................1

II.    HISTORY OF THE LITIGATION AND SETTLEMENT................................2

III.   THE SETTLEMENT CONFERS SUBSTANTIAL BENEFITS TO THE CLASS............................................................................................................5

IV.   THE COURT SHOULD AWARD THE FULL AMOUNT OF ATTORNEYS' FEES THAT ANTHEM HAS AGREED TO PAY...............................................6

     A.    The motion should be granted outright with minimal, if any, judicial review...............................................................................................7

     B.    Alternatively, the requested fee award is reasonable under the lodestar method...............................................................................................8

         1.    The number of hours that Class Counsel expended prosecuting this case is reasonable..........................................................9

         2.    Class counsel's hourly rates are reasonable..................................11

V.    CLASS COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT..............12

VI.   THE COURT SHOULD APPROVE THE SERVICE AWARD OF $15,000 TO CLASS REPRESENTATIVE LAWRENCE BRADFORD....13

VII.  CONCLUSION............................................................................................14

i

1

**TABLE OF AUTHORITIES**

2

*Pages*

3

*Blackwell v. Foley,*
    724 F.Supp.2d 1068 (N.D. Cal. 2010)..................................................................9

4

*Blum v. Stenson,*
    465 U.S. 886, fn. 11 (1984)................................................................................9

5

6

*Couch v. Cont'l. Cas. Co.,*
    2008 WL 131198 (E.D. Ky. Jan. 11, 2008)........................................................11

7

*Estiverne v. Esernio-Jenssen,*
    908 F.Supp.2d 305 (E.D.N.Y. 2012)..................................................................11

8

9

*ExperExchange, Inc. v. Doculex, Inc.,*
    No. C–08–03875 JCS, 2010 WL 1881484 (N.D. Cal. May 10, 2010)..............10

10

*Guillidge v. Hartford Life & Accid. Ins. Co.,*
    501 F.Supp.2d 1280 (C.D. Cal. 2007)................................................................9

11

12

*Hardt v. Reliance Standard Life Ins. Co.,*
    560 U.S. 242 (2010).............................................................................................7

13

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994).................................................................................12

14

15

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)..........................................................................................8,9

16

*In re Mercury Interactive Corp. Securities Litigation,*
    618 F.3d 988 (9th Cir. 2014)...............................................................................8

17

18

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
    No. 06-CIV-5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)..............7

19

*Marbled Murrelet v. Pacific Lumber Co.,*
    163 F.R.D. 308 (N.D. Cal. 1995)......................................................................10

20

21

*McBean v. City of New York,*
    233 F.R.D. 377 (S.D.N.Y. 2006).....................................................................7,8

22

*Morales v. City of San Rafael,*
    96 F.3d 359 (9th Cir. 1996).................................................................................8

23

24

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009).............................................................................13

25

*Rux v. Starbucks Corp.,*
    2007 WL 1098550 (E.D. Cal. Apr. 12, 2007)...................................................10

26

27

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan,*
    85 F.3d 455 (9th Cir. 1996).................................................................................6

28

ii

*Sierra Club v. U.S. Environmental Protection Agency*,
   625 F.Supp.2d 863 (N.D. Cal. 2007)..................................................................9

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*,
   770 F.3d 1282 (9th Cir. 2014)......................................................................3

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990)......................................................................9

*Van Vranken v. Atl. Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995)..............................................................13

**Statutes**

29 U.S.C.
   § 1132(g)(1)...........................................................................................7

**Rules**

Federal Rule of Civil Procedure
   23(h).....................................................................................................6

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This case concerns defendants Anthem, Inc. and Anthem UM Services, Inc.'s (jointly, "Anthem" or "Defendants") categorical denial of two-level cervical artificial disc replacement surgery ("2C-ADR") as "investigational" and excluded from coverage during a three-year period—from August of 2013 when the FDA first approved the surgery as safe and effective to August of 2016 when Anthem changed its position and began covering the surgery.

After approximately eighteen (18) months of litigation, the parties reached a settlement that provides an excellent result for the class, indeed, the very relief requested in the Complaint. Anthem has agreed that, for all persons who were denied 2C-ADR during the relevant time period and paid out-of-pocket for it, they can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other sources. If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the class member for the out-of-pocket expenses up to a maximum of $35,000. For those who have not yet undergone 2C-ADR, and are currently covered by Anthem, they can submit their requests for approval of the surgery pursuant to the terms of their existing Anthem contracts.

To compensate them for the benefits conferred upon the Class, Class Counsel requests an award of $468,000.00 in fees and $6,510.45 in expenses. These amounts are fair and reasonable, and adequately compensate Class Counsel for their substantial efforts. Class Counsel vigorously prosecuted the case and engaged in extensive expert consultation and discovery on the detailed medical issues presented by this case. This case has been aggressively litigated from the start, and Class Counsel has not received any compensation. Their fee has been wholly contingent upon obtaining a favorable result for the Class.

The attorneys' fees requested are authorized under Rule 23(h) of the Federal Rules of Civil Procedure and 29 U.S.C. section 1132(g)(1). Notably, the attorneys' fees and expenses that Blue Shield has agreed to pay are separate from class settlement benefits. Thus, any fee and expense award will not affect the class relief.

In addition to the attorneys' fees and expenses, Plaintiff and the class also seeks approval of a service award of $15,000.00 for the significant efforts of the class representative in pursuing this case.

In the absence of Class Counsel's assiduous efforts, including negotiation of the settlement terms, and the class representative's services, the significant class relief could not have been achieved. To compensate them for their efforts, the Court should award them the requested fees and expenses, and award the class representative the requested incentive award.

## II.   HISTORY OF THE LITIGATION AND SETTLEMENT

On July 11, 2017, Bradford filed this ERISA class action case against Anthem, Inc. and Anthem UM Services, Inc. seeking declaratory and injunctive relief on behalf of the class pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) and an individual claim for benefits under 29 U.S.C. § 1132(a)(1)(B). (Dkt. 1; Gianelli Decl. at ¶ 6.)

The Complaint alleges that: Defendants categorically deny all requests for two-level cervical artificial disc replacement surgery ("2C-ADR") on the basis that the procedure is "investigational" and "not medically necessary" under its internal guideline, SURG.00055, a written Medical Policy regarding 2C-ADR (Dkt. 1, ¶¶ 20-25); Defendants denied Bradford's request for 2C-ADR on this basis (*id.*, ¶¶ 27-40.); and, contrary to Defendants' position, 2C-ADR is safe and effective when performed with a device approved by the United States Food and Drug Administration ("FDA"). (*Id.*, ¶¶ 12-16; *see also* Gianelli Decl. at ¶ 7.) The primary relief requested by Plaintiff is an injunction requiring Anthem to provide notice to members who have had requests for 2C-ADR surgery denied, to re-review the denied claims under the proper standard,

1  and make payment where appropriate. (Dkt. 1 at ¶ 65; Gianelli Decl. at ¶ 7.)

2        Defendants' primary defense as to the class allegations was that it revised

3  SURG.00055 on August 18, 2016, shortly after Bradford's claim for 2C-ADR was

4  denied. The revised policy no longer categorically declared 2C-ADR to be

5  "investigational" and "not medically necessary"; it states, instead, "that implantation of

6  a Mobi-C Cervical Disc Prosthesis ("Mobi-C") at two contiguous levels [is] considered

7  medically necessary when certain individual criteria are met." (Dkt. 26 at 3; Gianelli

8  Decl. at ¶ 8.)[1]

9        Defendants further contended that SURG.00055, the Medical Policy in effect

10  during the class period, was justified because there was insufficient evidence of the

11  long-term health effects of 2C-ADR at the time of FDA approval. (Gianelli Decl. at ¶

12  9.)

13        Upon the filing of the Complaint, Defendants filed a Rule 12(b)(6) motion to

14  dismiss on the grounds that Defendant Anthem, Inc. was a mere "parent company" with

15  no involvement in the development and implementation of SURG.00055, and therefore

16  was an improper defendant with respect to Plaintiff's claim for denial of benefits under

17  ERISA § 1132(a)(1)(B) and for equitable relief under § 1132(a)(3). (Gianelli Decl. at ¶

18  10.) Plaintiff opposed the motion, arguing that Anthem, Inc. was a *de facto* plan

19  administrator under the Ninth Circuit's decision in *Spinedex Physical Therapy USA,*

20  *Inc. v. United Healthcare of Arizona, Inc*. 770 F.3d 1282 (9th Cir. 2014). (*Id*.) The

21  Court agreed with Plaintiff's position and denied the motion to dismiss. (*Id*.)

22        Following the resolution of Defendants' pleading challenge, Plaintiff served

23  Defendants with a set of comprehensive production requests, seeking documentary

24  information supportive of the denial of benefits and breach of fiduciary duty claims

25  asserted in the Complaint (both of which are class claims). (*See* Gianelli Decl. at ¶ 11.)

26

27  [1] Page references for documents filed and appearing on the Court's docket are to the
pagination at the top of the document automatically provided by the federal courts'

28  Case Management/Electronic Case Files (CM/ECF) system upon electronic filing of the
document.

1   Among other things, Plaintiff sought the relevant plan documents; all versions of

2   SURG.00055 as it has existed during the class period; all documents and Electronically

3   Stored Information ("ESI") showing how SURG.00055 was developed, researched,

4   written, voted on, decided upon, approved, or implemented; all documents and ESI

5   showing Defendants' processes for reviewing or determining 2C-ADR claims; form

6   letters or template language relied upon by Defendants to deny 2C-ADR claims during

7   the class period; the class data (number of denials, etc.); and the medical evidence

8   supportive of Defendants' contention that 2C-ADR is "investigational" and "not

9   medically necessary." (*Id.*)

10      In January 2018 the parties completed their initial disclosures. Plaintiff produced

11   over seven hundred (700) pages of documents, including medical records, claim records

12   and correspondence, insurance documents, and FDA documents and other evidence

13   supportive of his position that 2C-ADR is safe and effective. (Gianelli Decl. at ¶ 12.)

14      In or about February of 2018, Plaintiff served special interrogatories requesting

15   factual information concerning the various class certification elements and Defendants'

16   development and implementation of SURG.00055. (Gianelli Decl. at ¶ 13.)

17      On or about March 5, 2018, Defendants responded to Plaintiff's production

18   requests. Defendants asserted objections and took the position that they were under no

19   obligation to produce any responsive documents beyond the "administrative record."

20   Plaintiff initiated meet and confer efforts but the parties were unable to resolve their

21   dispute. Accordingly, on April 18, 2018, Plaintiff sent a lengthy Joint Stipulation to

22   each Defendant setting forth Plaintiff's position that the "administrative record"

23   limitation does not apply, and addressing each of Defendants' remaining objections to

24   the production requests. (Gianelli Decl. at ¶ 14.)

25      The Joint Stipulations were not filed. In or about late April/early May of 2018,

26   the parties agreed to table their discovery dispute with respect to the production

27   requests, and to extend the time for responding to the special interrogatories, while they

28   engaged in settlement negotiations. As part of these negotiations, the parties agreed to

4

1    informally exchange information, including information pertinent to the class

2    certification elements. (Gianelli Decl. at ¶ 15.)

3        The parties attended a mediation on May 30, 2018 before an experienced and

4    well-respected mediator, Edwin Oster, Esq. of Judicate West. Following the mediation,

5    the parties engaged in extensive negotiations through the mediator. (Gianelli Decl. at ¶

6    16.)

7        Prior to the mediation, Bradford's counsel conducted their own investigation and

8    evaluation of the relevant law and facts necessary to assess the strengths and

9    weaknesses of the case. Class Counsel's evaluation was enabled by their experience in

10   handling similar cases and through consultation with experts regarding 2C-ADR.

11   (Gianelli Decl. at ¶ 17.)

12       After months of negotiation, the parties arrived at a settlement of this case.

13   (Gianelli Decl. at ¶ 18.) As set forth *infra* at section III., the settlement provides

14   substantially all of the relief requested in the Complaint.

15       As part of the Settlement, Anthem has agreed to pay (and not contest any award

16   of) up to $474,510.45 for attorneys' fees and costs in this case. Anthem's fee payment

17   was negotiated separately from the Class relief and will be paid separate and apart from

18   the benefits provided to the Class members. (*Id*. at ¶ 19.)

19       On January 31, 2019, this Court granted preliminary approval of the proposed

20   settlement in this case. (Dkt. 42.)

21   **III.   THE SETTLEMENT CONFERS SUBSTANTIAL BENEFITS TO THE**

22   **CLASS**

23       As noted, the Settlement provides for the very relief sought in the Complaint

24   and, indeed, the only appropriate relief that is available under the law for the ERISA

25   claims alleged. Under the terms of the Settlement, all class members who have paid

26   out-of-pocket for 2C-ADR can make claims for reimbursement to the extent those out-

27   of-pocket payments have not been paid by other insurance, Medicare, or other

28   reimbursement sources for which the class member owes no reimbursement obligation.

If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the Class Member for the out-of-pocket expenses up to a maximum of $35,000. (Dkt. 41 at 10, ¶ 10; Gianelli Decl. at ¶ 18.)

Where, as here, an insurer denies member claims for benefits under the wrong standard—embodied here in Anthem's categorical application of SURG.00055 to deny claims for 2C-ADR as "investigational" and "not medically necessary"—the appropriate remedy is not payment for all, but rather the reprocessing of the denied claims under the proper standard. *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) (reprocessing is appropriate injunctive relief for denial of plan benefits when an ERISA administrator applies the wrong standard to a benefit determination.)  That is precisely the relief obtained here.

In addition, for class members who have not yet undergone 2C-ADR and are currently covered by Anthem, they can submit their requests for approval for the surgery pursuant to the terms of their existing Anthem contracts. Class members who have not yet received the surgery and are no longer covered by Anthem are ineligible for the surgery through Anthem. (Dkt. 41 at 11, ¶ 11.) However, they release no claims and are free to make claim with any health plan they now have or will have in the future. (*Id. See also* Dkt. 41 at 9, ¶ 8(p).)

If Anthem denies a claim for reimbursement or a request for surgery approval under the new guidelines, Anthem will comply with the adverse benefit determination and appeal provisions of ERISA. (Dkt. 41 at 10-11, ¶¶ 10-11.)

## IV.   THE COURT SHOULD AWARD THE FULL AMOUNT OF ATTORNEYS' FEES THAT ANTHEM HAS AGREED TO PAY

Federal Rule of Civil Procedure 23(h) expressly provides for an award of reasonable attorneys' fees and costs in a certified class action pursuant to a settlement agreement. Here, Anthem has agreed to pay reasonable attorneys' fees and costs as

6

approved by this Court not to exceed $474,510.45. (Gianelli Decl. at ¶ 19.)

ERISA law further authorizes an award of reasonable attorneys' fees and costs. 29 U.S.C. section 1132(g)(1) ("In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.") The Supreme Court has held that a party can be award fees in ERISA cases so long as the requesting party "has achieved some success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244-245 (2010). Here, the success of Bradford and the class was ***total***, as the Settlement provides the class with the very items of injunctive relief requested in the Complaint.

Furthermore, the decision of an appropriate fee award in this case was made by an independent, third-party Mediator, which also weighs in favor of the award's reasonableness. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-CIV-5173 (RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) (noting that parties' negotiation of fee award to be paid directly by Defendants through arms-length negotiation with supervision of independent mediator were all factors weighing in favor of approving the fee award); *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) ("[T]he fact that the award was the product of arm's-length negotiations under the supervision of Judge Katz weighs strongly in favor of approval.").

### A.   The motion should be granted outright with minimal, if any, judicial review.

As set forth above, the attorneys' fees and expenses that Anthem has agreed to pay are separate from the class settlement benefits, which consist of the exact items of injunctive relief requested in the Complaint: (1) an injunction requiring Anthem to provide notice to members who have had requests for 2C-ADR surgery denied; (2) re-review by Anthem of claims improperly denied on "investigational" and "not medically necessary" grounds; and (3) payment by Anthem if warranted under Anthem's current

1  guidelines for evaluating 2C-ADR claims. Not only did the Class achieve all of the

2  relief sought in the Complaint, the fee and expense award will not affect the class relief.

3  Under the terms of the Settlement, the fee and expense award will be paid directly by

4  Anthem to Class Counsel.

5        In cases such as this one, where the parties agree to a fee that is to be paid

6  directly by the defendant rather than one that comes from, and therefore reduces, the

7  relief available to the class, "the Court's fiduciary role in overseeing the award is greatly

8  reduced" because "the danger of conflicts of interest between attorneys and class

9  members is diminished." *McBean v. City of New York, supra,* 233 F.R.D. at 392.

10  Indeed, in such cases the concerns animating judicial review of attorneys' fees and

11  expense awards—that "plaintiffs' counsel, otherwise a fiduciary for the class,

12  become[s] a clamaint against the fund created for the benefit of the class" at the fee

13  setting stage—are simply not implicated. *In re Mercury Interactive Corp. Securities*

14  *Litigation*, 618 F.3d 988, 994 (9th Cir. 2014).

15        Accordingly, this Motion should be granted outright with minimal, if any,

16  judicial review. Because the fee and expense award will be paid directly by Anthem to

17  Class Counsel, there is no danger that Class Counsel is or will "become a claimant

18  against [a] fund created for the benefit of the class." *Id.*

19        **B.    Alternatively, the requested fee award is reasonable under the lodestar**

20               **method.**

21        "The customary method of determining fees … is known as the lodestar method."

22  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The lodestar fee is

23  determined by multiplying the number of hours reasonably expended by a reasonable

24  hourly rate. *Id.* The inquiry as to whether the hours expended are reasonable is made in

25  view of the ultimate result of the litigation, not a hindsight examination of each discrete

26  step along the way. So long as the hours expended were reasonably incurred in pursuit

27  of that ultimate result and were spent on the type of work that would be billed to a

28  paying client, they are properly included in the lodestar calculation. *Hensley v.*

1    *Eckerhart*, 461 U.S. 424, 431, 434 (1983). The calculation properly includes time

2    expended in pre-litigation activity (interviewing the client, investigating the facts and

3    law, developing litigation strategy, and drafting the pleadings); time expended during

4    litigation, including appellate proceedings; and time expended to apply for a fee award.

5    *Sierra Club v. U.S. Environmental Protection Agency*, 625 F.Supp.2d 863, 869-871

6    (N.D. Cal. 2007).

7        A reasonable hourly rate is determined by reference to the prevailing market rate,

8    in the relevant legal market, for attorneys of comparable experience, expertise, and skill

9    in comparably complex work. *Blum v. Stenson*, 465 U.S. 886, 895, fn. 11 (1984).

10   Counsel's declarations, prior fee awards, and fees for other comparably qualified

11   counsel performing comparable work in the market are factors to consider. *United*

12   *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (noting

13   plaintiffs' counsel's affidavits and affidavits of other attorneys are satisfactory evidence

14   regarding prevailing rates); *Guillidge v. Hartford Life & Accid. Ins. Co.*, 501 F.Supp.2d

15   1280, 1282-83 (C.D. Cal. 2007) (basing fee award on prior award for comparably

16   complex work in same judicial district).

17
18         **1.**     **The number of hours that Class Counsel expended prosecuting this case is reasonable.**

19        As set forth in the attorney declaration of Robert S. Gianelli, class counsel has

20   spent 586.1 attorney hours investigating and prosecuting this case over a one-and-a-

21   half-year period, and anticipates spending an additional forty (40) hours securing Final

22   Approval of the Settlement and addressing post-judgment administrative issues.[2]

23   (Gianelli Decl. at ¶¶ 22, 30, 31.) "An attorney's sworn testimony that, in fact, he took

24   the time claimed … is evidence of considerable weight on the issue of the time

25   required." *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1081 (N.D. Cal. 2010).

26
27
28   _____
[2] Class counsel reduced the 40-hour time estimate to finally conclude this case to 23.36 hours to ensure that the lodestar does not exceed the amounts Anthem has agreed to pay and not oppose. (Gianelli Decl. at ¶ 31.)

This class action case presented complex medical questions of safety and efficacy with respect to 2C-ADR, which was approved by the FDA in 2013. (Gianelli Decl. at ¶ 21.) The case required Class Counsel not only to review and digest the large body of medical literature concerning 2C-ADR, but also required an in-depth understanding as to the FDA's labyrinthine regulations and the rigorous procedure by which the FDA evaluates medical procedures and devices for safety and efficacy. (*Id*.)

In addition to the significant issues of science and medicine relating to the merits question of whether 2C-ADR is safe and effective, the discovery and motion practice involved in this case demonstrates the time expended was reasonable and necessary to achieve the Settlement. Indeed, not only did Anthem file a motion to dismiss to extricate its parent company from this case, it refused to produce *any* documents or evidence outside of the administrative record, necessitating lengthy discovery motions as to each defendant. (*Id*. at ¶¶ 10-14.)

That the discovery motions were never filed is immaterial, given Anthem's intractable discovery position and the patent need for Court intervention absent settlement. Extensive authority supports awarding fees for time spent on unfiled motions. *See Rux v. Starbucks Corp.*, 2007 WL 1098550, *3-4 (E.D. Cal. Apr. 12, 2007) (granting attorneys' fees for time spent drafting plaintiff's portion of a related joint statement regarding a discovery dispute which was ultimately not filed in light of defendant's last minute agreement to produce the requested deponent); *Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308, 327 (N.D. Cal. 1995) (rejecting defendant's argument that plaintiffs should not be awarded fees for time spent on a second amended complaint and possible motion for reconsideration, both of which were never filed, where the court found that it had no reason to doubt plaintiffs' representation that the work was reasonably related to the case at hand); *ExperExchange, Inc. v. Doculex, Inc.*, No. C–08–03875 JCS, 2010 WL 1881484, *9 (N.D. Cal. May 10, 2010) (awarding party fees for time spent preparing a *Daubert* motion that was never filed and stating "[t]he fact that the motion was not, ultimately,

filed, does not mean that the time spent preparing the motion was unreasonable").

The time spent negotiating the settlement—which necessitated a review of the pertinent coverage documents, the class and merits issues, the outstanding discovery issues, preparing for and attending the mediation, and drafting settlement documents— was also reasonable and necessary to achieve the settlement. *Couch v. Cont'l. Cas. Co.*, 2008 WL 131198 at *5 (E.D. Ky. Jan. 11, 2008) (awarding attorneys' fees for time spent in settlement negotiations, in an ERISA action, because "settlement discussions are an ordinary part of the litigation process"); *Estiverne v. Esernio-Jenssen*, 908 F.Supp.2d 305, 310 (E.D.N.Y. 2012) (disallowing attorney's fees for even unsuccessful settlement negotiations would chill attorneys' pre-trial settlement efforts).

In sum, in litigating the case and negotiating the Settlement, Class Counsel endeavored to work efficiently and minimize duplication of efforts. The attorney hours spent on this case were necessary to achieve the Settlement and were thus reasonably incurred.

### 2.    Class counsel's hourly rates are reasonable.

The following are the billing rates for the attorneys who performed work on this case:

| | |
|---|---|
| Robert S. Gianelli | $900 per hour |
| Joshua S. Davis | $700 per hour |
| Adrian J. Barrio | $675 per hour |

(Gianelli Decl. at ¶ 24.)

Each of these rates has already been found reasonable and awarded in other class action cases for each of the billers. The rate sought for Mr. Gianelli was found reasonable and awarded in *Voshall v. Metropolitan Life Insurance Company*, Los Angeles Superior Court, Case No. BC5779832 ("*Voshall*"); *Akmal, et al. v. California Physicians' Service dba Blue Shield of California*, Los Angeles Superior Court, Case No. BC540033 ("*Akmal*"); *Escalante v. California Physicians Service dba Blue Shield of California* (C.D. Cal.) Case No. 2:14-CV-3021; *Gallimore v. Kaiser Foundation*

11

*Health Plan, Inc.*, Alameda County Case No. RG12616206 ("*Gallimore*"); *Vaccarino, et al. v. Midland National Life Ins. Co.*, United States District Court, CD Cal. Case No. 11 CV 5858 CAS(MANx) ("*Vaccarino*"); *Arce v. Kaiser Foundation Health Plan, Inc.*, Los Angeles Superior Court, Case No. BC388689 ("*Arce*"); and *Glick v. Anthem Blue Cross Life & Health Ins. Co.*, Los Angeles Superior Court, Case No. BC393528 ("*Glick*"). (Gianelli Decl. at ¶ 25.) Similarly, the rate sought for the remaining billers have previously been found reasonable and awarded: for Mr. Davis in *Vaccarino, Gallimore, Escalante, and Akmal,* and for Mr. Barrio in *Gallimore*, *Escalante*, *Akmal*, and *Voshall*. (Gianelli Decl. at ¶ 25.)

Notably, the very rates sought here were approved in the *Gallimore* action, *supra*, following a contested fee application. (Gianelli Decl. at ¶ 26.)

## V.   CLASS COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

In addition to the fees that Anthem has agreed to pay, it has also agreed to pay expenses Class Counsel incurred in litigating this action up to a combined total amount of $474,510.45. Class Counsel has submitted a declaration setting forth the litigation expenses incurred, which total $6,510.45, and attesting to their accuracy. Class Counsel incurred costs on experts and consultants, discovery, electronic research, transcripts, and photocopies. (Gianelli Dec. at ¶¶ 32-33.)

All of these expenses are typically billed by attorneys to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). And all of these costs were necessary and reasonably incurred to achieve the substantial settlement. As the standard for reimbursement has been met, the Court should approve the requested expense award in the amount Anthem has agreed to pay.

///

///

///

///

12

## VI.    THE COURT SHOULD APPROVE THE SERVICE AWARD OF $15,000 TO CLASS REPRESENTATIVE LAWRENCE BRADFORD

Under the Settlement, Anthem has also agreed to pay—separate and apart from the settlement benefits to the Class—a service award of $15,000 to Plaintiff Lawrence Bradford. Service awards are fairly typical in class actions to compensate class representatives for work on the class's behalf and to make up for financial or reputational risk undertaken in bringing the action. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). The factors to consider in approving a service award include the amount of time and effort spent by the class representative, the duration of the litigation, and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).

Consideration of these factors yields the conclusion that the requested service award is reasonable. Over the course of this litigation, Plaintiff Bradford assisted counsel in producing hundreds of pages of documents containing sensitive medical information about him and the handling of his claim by Anthem Blue Cross and the Motion Picture Industry Health Plans ("MPIHP"), among other tasks. (Bradford Decl. at ¶¶ 4-6.) Aside from the service award, the benefit available to Plaintiff Bradford under the Settlement is the same as that available to the other Class members. (Gianelli Decl. at ¶ 33.)

Further supporting the reasonableness of the requested service awards are awards approved in other class action cases. *See, e.g., Van Vranken, supra,* 901 F.Supp. at 299 (awarding class representative $50,000 for his service to class); *In re National Western Life Ins. Deferred Annuities Litig.*, 05-CV-1018 (S.D. Cal.), Dkt. No. 431 (approving $10,000 service awards to each of the two class representatives); *In re American Equity Annuity Practices & Sales Litig.*, 05-CV-06735 (C.D. Cal.), Dkt. No. 251 (same); *Iorio v. Allianz Life Ins. of N. America*, 05-CV-0633 (S.D. Cal.) (approving service awards of $25,000 to each class representative).

1    In recognition of the services he has dutifully and diligently rendered to the

2  Class, the requested service award of $15,000.00 for Plaintiff Lawrence Bradford

3  should be approved.

4  **VII.   CONCLUSION**

5    In light of the services rendered to the Class and the substantial benefits obtained

6  under the Settlement, Plaintiff and the Class respectfully request that the Court award

7  Class Counsel attorneys' fees in the amount of $468,000.00, expenses in the amount of

8  $6,510.45, and a class representative service award of $15,000 to Plaintiff Lawrence

9  Bradford.

10  DATED:       February 20, 2019                    GIANELLI & MORRIS

12                                     By:___/s/ Robert S. Gianelli_____
                                           ROBERT S. GIANELLI
13                                         JOSHUA S. DAVIS
                                           ADRIAN J. BARRIO
14                                         Attorneys for Plaintiff,
                                           LAWRENCE BRADFORD