ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff
LAWRENCE BRADFORD, on behalf
of himself and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE BRADFORD, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ANTHEM, INC.; ANTHEM UM SERVICES, INC.,<br><br>　　　　　Defendants. | Case No.: 2:17-cv-5098 AB (KSx)<br>Assigned to Hon. Andre Birotte, Jr. D-7B<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:　May 17, 2019<br>TIME:.　10:00 a.m.<br>PLACE:　Courtroom 7B<br><br>Complaint Filed: July 11, 2017 |

1

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 17, 2019, at 10:00 a.m. in Courtroom 7B of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, Plaintiff Lawrence Bradford will and hereby does move pursuant to Rule 23 of the Federal Rules of Civil Procedure for an Order: (1) finding that the Class Notice has been adequate and reasonable, met the requirements of Rule 23, and has constituted the best notice practicable under the circumstances; (2) granting final approval of the proposed First Amended Settlement Agreement; and (3) directing entry of Final Judgment, dismissing the action (including all individual and class claims presented thereby) on the merits with prejudice.

This Motion is based on this Notice of Motion and Motion, the attached memorandum in support thereof, and the Declaration of Kristie Livingston Re: Class Notice Procedures. This Motion is also based on Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative Service Award ("Fee Motion"), filed February 20, 2019; the declarations and exhibits submitted in support of the Fee Motion; the entire record in this proceeding, including but not limited to the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the declarations and exhibits in support thereof, and the Supplemental Brief in support of the Motion for Preliminary Approval filed on January 25, 2019; the Court's findings and conclusions contained in its Preliminary Approval Order; the Court's files and records in this matter; and upon such other matters as may be presented at the time of the hearing.

DATED: April 19, 2019             GIANELLI & MORRIS

                                  By:   /s/ Adrian J. Barrio
                                        ROBERT S. GIANELLI
                                        JOSHUA S. DAVIS
                                        ADRIAN J. BARRIO
                                        Attorneys for Plaintiff

1

# TABLE OF CONTENTS

*Pages*

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I. INTRODUCTION....................................................................................1

II. SUMMARY OF THE LITIGATION.......................................................2

III. THE SETTLEMENT SHOULD BE FINALLY APPROVED...................2

    A. The Class Notice was adequate and effective........................................3

        1. The Administrator has provided the best practicable notice of the Settlement to the Class Members...................3

        2. The Class Notice adequately informed Class Members of the Settlement.................................................................5

    B. The Settlement is fundamentally fair, adequate and reasonable...........5

        1. Strength of the Class Claims.......................................................6

        2. Risk and expense of further litigation.........................................8

        3. Risk of maintaining class action status through trial..................9

        4. Amount and benefits of the Settlement......................................9

        5. Extent of discovery and state of proceedings, including the absence of collusion..................................................................10

        6. Experience and views of counsel...............................................13

        7. The reaction of the Class has been overwhelmingly positive and strongly supports approval..................................13

IV. CONCLUSION.........................................................................................14

i

# TABLE OF AUTHORITIES

**Pages**

*Bayat v. Bank of the West,*
    No. C–13–2376 EMC, 2015 WL 1744342 ............................................................ 9

*Churchill Village, LLC v. General Electric*
    361 F.3d 566 (9th Cir. 2004) ............................................................................... 5

*Class Pls. v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ............................................................................ 6

*Davis v. City & Cnty. of San Francisco*
    890 F.2d 1438 (9th Cir.1989) ............................................................................. 6

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ....................................................................... 9,13

*In re Integra Realty Res., Inc.*
    262 F.3d 1089 (10th Cir. 2001) .......................................................................... 5

*In re Mego Financial Corp. Securities Litigation*
    213 F.3d 454 (9th Cir. 2000) .............................................................................. 5

*In re Pacific Enterprises Securities Litig.*
    47 F.3d 373 (9th Cir. 1995) .............................................................................. 13

*In re Syncor ERISA Lit*igation
    516 F.3d 1095 (9th Cir. 2008) ............................................................................ 3

*In re TOYS "R" US-DELAWARE, INC.*
    295 F.R.D. 438 (C.D. Cal. 2014) ...................................................................... 13

*Lane v. Brown*
    166 F.Supp.3d 1180 (D. Or. 2016) .................................................................. 8,9

*Monterrubio v. Best Buy Stores, LP.*
    291 F.R.D. 443 (E.D. Cal. 2013) ........................................................................ 3

*Mullane v. Cent. Hanover Bank & Trust Co.*
    339 US. 306 (1950) ............................................................................................ 3

*Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................ 3,6,10,12

*Officers for Justice v. Civil Service Commission*
    688 F.2d 615, 625 (9th Cir. 1982) .................................................................. 3,6

*Riegel v. Medtronic, Inc.*
    552 U.S. 312 (2008) ........................................................................................ 7,8

# TABLE OF AUTHORITIES

*Pages*

*Rodriguez v. West Publishing Corp.*
  563 F.3d 948 (9th Cir. 2009)..................................................................12,13

*Ross v. A.H. Robins*
  700 F.Supp. 682 (S.D.N.Y. 1988).................................................................14

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*
  85 F.3d 455 (9th Cir. 1996)..........................................................................10

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir.1993)..............................................................................6

**Statutes**

21 U.S.C.

  § 360e(d)..........................................................................................................8

  § 360c(a)(2)(C)................................................................................................8

  § 360e(c)(1).....................................................................................................7

Code of Federal Regulations

  Title 21 § 812.20(a)(1)....................................................................................7

  Title 21 § 812.25(b).........................................................................................7

  Title 21 § 814.20(b)(7)....................................................................................7

  Title 21 § 814.44(a)..........................................................................................8

Federal Rules of Civil Procedure

  Rule 23....................................................................................................*passim*

The Americans with Disabilities Act of 1990.........................................................9

Employee Retirement Income Security Act ("ERISA")........................................10

United States Food and Drug Administration ("FDA")..................................*passim*

**Treatises**

MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.14 (1995).....................3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On January 30, 2019, the Court preliminarily approved the First Amended Settlement Agreement ("the Settlement") between Plaintiff Lawrence Bradford ("Bradford") and defendants Anthem, Inc. and Anthem UM Services, Inc. (jointly, "Anthem" or "Defendants"), finding it fair, adequate, reasonable, and within the realm of possible final approval. Nothing has occurred since then to deviate from that finding.

Bradford respectfully requests the Court to finally approve the proposed settlement, which provides substantially all of the relief requested in the Complaint. For all persons who were denied two-level cervical artificial disc replacement surgery ("2C-ADR") during the relevant time period and paid out-of-pocket for it, they can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other sources. If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the class member for the out-of-pocket expenses up to a maximum of $35,000. For those who have not yet undergone 2C-ADR, and are currently covered by Anthem, they can submit their requests for approval of the surgery pursuant to the terms of their existing Anthem contracts.

The Settlement represents the end-result of an adversarial process where the interests of the class were vigorously and fully represented by Class Counsel. In addition to fleshing out the class issues in discovery—prompting a discovery battle concerning the scope of permissible discovery that was avoided by the Settlement—Plaintiff's counsel engaged in extensive investigation regarding Anthem's bases for refusing to cover 2C-ADR, engaged in extensive investigation and research regarding the safety and effectiveness of 2C-ADR, and consulted with experts on 2C-ADR, the body of medical literature addressing it, and the FDA approval process. Through this work and the parties' mediation efforts, which involved

extensive arms-length negotiations, the parties were made aware of the strengths and weaknesses of the claims and defenses and were well positioned to assess the fairness, adequacy, and reasonableness of the Settlement against the risks and uncertainties of continued litigation.

As required by the relevant Ninth Circuit authority and Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement is fundamentally fair, adequate and reasonable. Further, as this Court found in granting preliminary approval of the Settlement, the Class (defined in paragraph 8(b) of the Settlement) meets the requirements for certification of a settlement class. Finally, the Class Notice satisfies Rule 23(c)(2)(B) and (e)(1)(B), and has provided the best notice practicable under the circumstances. Accordingly, the Court should issue a final order and judgment certifying the Class and granting final approval of the Settlement.

## II.     SUMMARY OF THE LITIGATION

For a history of the litigation, summary of the settlement negotiations, and a discussion of the settlement terms, see Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative Service Award (Fee Motion). (Dkt. 36 at pp. 9-14; Dkt. 43 at pp. 7-11; *see also* Dkt. 36-1 [Gianelli Dec. in support of prelim. app. mot.] at ¶¶ 6-18; Dkt. 43-1 [Gianelli Dec. in support of fee motion] at ¶¶ 6-19.)[1]

## III.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

Rule 23(e)(1)(A) requires that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Approval under Rule 23 involves a two-step process "in which the

---

[1] Page references for documents filed and appearing on the Court's docket are to the pagination at the top of the document automatically provided by the federal courts' Case Management/Electronic Case Files (CM/ECF) system upon electronic filing of the document.

[c]ourt first determines whether a proposed class action deserves preliminary approval and then, after notice is given to the class members, whether final approval is warranted." *Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.14, at 236-37 (1995). The Ninth Circuit has noted that, in considering whether to finally approve a settlement, "there is a strong judicial policy that favors settlements, particularly where class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."), *cert denied*, 495 U.S. 1217 (1983).

Here, this Court preliminarily approved the Settlement on January 30, 2019. As explained below, notice has been properly given to the Class Members. The Class Administrator has received zero (0) objections and only one (1) opt-out. Nothing has materially changed which would cause this Court to deviate from its preliminary finding.

### A. The Class Notice was adequate and effective.
#### 1. The Administrator has provided the best practicable notice of the Settlement to the Class Members.

Rule 23(e) requires that "notice of the proposed dismissal and compromise [of a class action] shall be given to all members of the class in such a manner as the court directs." Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Monterrubio v. Best Buy Stores, LP.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 US. 306, 314 (1950)).

In its January 30, 2019 Order preliminarily approving the Settlement, the Court approved the Settlement's revised notice provisions, set forth at paragraph 19 of the Settlement, which require that "notice will be mailed in Priority Mail Flat Rate Envelopes that contain the following language on the front and back of the envelope: "IMPORTANT CLASS ACTION SETTLEMENT NOTICE RE ANTHEM'S DENIAL OF YOUR CLAIM FOR SERVICE." (Dkt. 42 at p. 3, paras. 5, 6.) The Court further appointed Rust Consulting, Inc. ("Rust") as the Settlement Administrator and directed it to mail the Class Notice to the identified Class Members per the foregoing procedures. (*Id.* at p. 4, paras. 4, 5.)

As detailed in the declaration of Rust Senior Project Manager Kristie Livingston, Rust mailed the Notices in security envelopes via U.S.P.S. Priority Mail, with the court-ordered language pre-printed in capital letters on both the front and back of each envelope. (Livingston Decl. at ¶¶ 4-7.) A flate rate envelope was not used in order to "facilitate the pre-printing of the court-required language on the envelopes."[2] (Id. at ¶ 7.) An exemplar of the Notice mailed to the class members is attached to the Declaration of Kristie Livingston as Exhibit A, and an exemplar of the envelopes used in the mailing is attached to Ms. Livingston's declaration as Exhibit B.

As of March 18, 2019, thirteen (13) notices had been returned as undeliverable. However, Rust manually traced the 13 undeliverable addresses and located eleven (11) updated addresses. As of March 22, 2019, Rust Consulting had

---

[2] The Administrator did not consult Plaintiff's counsel regarding the decision to use security envelopes instead of flat rate envelopes. Ultimately, however, because the mailing occurred via U.S.P.S. Priority Mail, with the required court-ordered language on the front and back of each envelope, Plaintiff's counsel believes that the mailing is in substantial compliance with the Court's order. The proposed final order and judgment concurrently-filed with this Motion, originally submitted as Exhibit C to the First Amended Settlement Agreement (Dkt. 41 at pp. 47-53), has been slightly modified to reflect substantial compliance.

re-mailed notices via U.S.P.S. Priority Mail to those Class Members with an updated address. Thus, 196 of the 198 class members (99%) received the Class Notice. That is more than sufficient to satisfy Rule 23(c). *See, e.g.*, *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-1118 (10th Cir. 2001) (Rule 23 and due process satisfied where 77% of class members received notice of settlement.).

### 2. The Class Notice adequately informed Class Members of the Settlement.

Notice is satisfactory if it "'generally describe[s] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). In addition, Rule 23(h)(1) requires that notice of Class Counsel's request for attorneys' fees be "directed to class members in a reasonable manner." The Class Notice easily satisfies these requirements.

The Class Notice clearly and concisely states in plain, easily understood language the nature of the action, the defined Class, the class claims, issues and defenses, the terms of the Settlement, including attorneys' fees paid to Class Counsel, that a Class Member may object to the Settlement, that the Court will exclude anyone from the Class who requests exclusion, the time and manner for requesting exclusion or objecting to the Settlement, and the binding effect of a class judgment on members under Rule 23(c)(3). (*See* Ex. A to Livingston Decl.) The Class Notice adequately informs Class Members of the proposed Settlement.

### B. The Settlement is fundamentally fair, adequate and reasonable.

The Ninth Circuit has interpreted Rule 23(e) to require the district court to determine whether a proposed settlement is "fundamentally fair, adequate and reasonable." *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000). To make this determination, courts "may consider some or all of the following factors," including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of

maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id*. In addition, the settlement cannot be the product of collusion among the negotiating parties. *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).

Not all factors will apply to every class action settlement, and certain factors may predominate depending on the nature of the case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993). "The degree of importance attached to each factor is determined by the nature of the claim, the type of relief sought and the facts and circumstances of each case." *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438, 1444–45 (9th Cir.1989).

### 1. Strength of the Class Claims

A key factor in considering the reasonableness of a settlement "is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.Cal.2004) (internal quotation marks and citation omitted). However, the court's role is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

This case arises from Anthem's categorical denial of 2C-ADR as "investigational" and excluded from coverage during a three-year period—from August of 2013 when the FDA first approved the surgery as safe and effective to August of 2016 when Anthem changed its position and began covering the surgery. Bradford was denied 2C-ADR for this reason.

///

Plaintiff's position that Anthem wrongly refused to cover 2C-ADR for himself and the class on "investigational" grounds is strong. Indeed, 2C-ADR satisfied the FDA's exacting premarket approval ("PMA") requirements, applicable to Class III medical devices, well over five (5) years ago, and in that time span the FDA has not limited or conditioned its approval in any way.

The FDA's granting of PMA is significant—indeed dispositive—and undercuts any plausible claim by Anthem that 2C-ADR is "investigational." As explained by the United States Supreme Court in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), the PMA process is "rigorous" and requires, among other things, a multivolume application containing full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant;[3] a "full statement" of the device's "components, ingredients, and properties and of the principle or principles of operation"; "a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device"; samples or device components required by the FDA; and a specimen of the proposed labeling. *Id*. at 317-318 (citing 21 U.S.C. § 360e(c)(1).)

One of the main components of a PMA is a clinical (human) trial to test the device for safety and effectiveness. The sponsor of a Class III medical device must submit an application for an IDE to the FDA to perform a clinical trial with their device. *See* 21 C.F.R. § 812.20(a)(1). As part of the IDE application, the sponsor must submit an "investigational plan" that describes, among other things, "the methodology to be used and an analysis of the protocol demonstrating that the investigation is scientifically sound." 21 C.F.R. § 812.25(b).

///

---

[3] This requirement ordinarily entails several clinical investigations, since if the sponsor has data only from one clinical investigation, it must demonstrate that this single investigation produced enough information to demonstrate the safety and effectiveness of the device. *See* 21 C.F.R. § 814.20(b)(7).

The FDA spends an average of 1,200 hours reviewing each application and grants PMA only if it finds there is a "'reasonable assurance' of the device's 'safety and effectiveness.'" *Riegel*, 552 U.S. at 318 (citing 21 U.S.C. § 360e(d).) The agency must "weig[h] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." *Id*. (citing 21 U.S.C. § 360c(a)(2)(C).)

As part of its review process, the FDA refers the PMA to an "outside panel of experts" unless the FDA "determines that the application substantially duplicates information previously reviewed by a panel." *Riegel*, *supra*, 552 U.S. 312, 318; 21 C.F.R. § 814.44(a). The expert panel conducts an independent review of the PMA and is required to "submit a report to FDA which includes the committee's recommendation and the basis of such recommendation on the PMA." *Id*. at § 814.44(b).

The fact that the FDA granted PMA to 2C-ADR in August 2013 means that all of the requirements meticulously catalogued in *Riegel* were satisfied as to 2C-ADR. There is therefore no basis for Anthem's claim that 2C-ADR was "investigational" at any point after August 2013.

### 2. Risk and expense of further litigation.

Despite the strength of Plaintiff's position, had this case not settled, the parties faced an expensive trial. Indeed, although the parties "had already incurred significant litigation expenses, the cost of preparing for and handling the trial with a number of expert witnesses on both sides would have been enormous." *Lane v. Brown*, 166 F.Supp.3d 1180, 1189 (D. Or. 2016). Moreover, "no matter who won at trial, an appeal was likely, adding further costs." *Id*. Finally, even if Plaintiffs prevailed, "the precise nature and scope of relief ordered by the court may not have been as comprehensive or detailed as contained in the Agreement and could have taken potentially many more years to implement." *Id*. The risk and expense of further litigation thus weigh in favor of approval. *Id*.

### 3. Risk of maintaining class action status through trial.

The parties' settlement eliminates any risk of decertification and "immunizes the class certification order from attack by [Anthem]." *Lane*, *supra*, 166 F.Supp.3d at 1189. This factor weighs in favor of approval. *Id*.

### 4. Amount and benefits of the Settlement.

"[T]he critical component of any settlement is the amount of relief obtained by the class." *Lane*, *supra*, 166 F.Supp.3d at 1189 (quoting *Bayat v. Bank of the West*, No. C–13–2376 EMC, 2015 WL 1744342, at *4 (N.D.Cal. April 15, 2015)). A settlement that provides for "comprehensive and substantial" injunctive relief weighs strongly in favor of approval. *Lane*, *supra*, 166 F.3d at 1189 (approving injunctive relief settlement that, among other things, required the State of Oregon to "create and implement a number of policies and practices to facilitate compliance with the [Americans with Disabilities Act of 1990]"). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (approving injunctive relief settlement that "obligate[d]" the defendant to "make [its] minivans safe").

The Complaint alleges that: Defendants categorically deny all requests for two-level cervical artificial disc replacement surgery ("2C-ADR") on the basis that the procedure is "investigational" and "not medically necessary" under its internal guideline, SURG.00055, a written Medical Policy regarding 2C-ADR (Dkt. 1, ¶¶ 20-25); Defendants denied Bradford's request for 2C-ADR on this basis (*id.*, ¶¶ 27-40.); and, contrary to Defendants' position, 2C-ADR is safe and effective when performed with a device approved by the United States Food and Drug Administration ("FDA"). (*Id.*, ¶¶ 12-16.) The primary relief requested by Plaintiff is an injunction requiring Anthem to provide notice to members who have had requests for 2C-ADR surgery denied, to re-review the denied claims under the proper standard, and make payment where appropriate. (Dkt. 1 at ¶ 65.)

As noted, the Settlement provides for the primary injunctive relief sought in the Complaint. Under the terms of the Settlement, all class members who have paid

9

out-of-pocket for 2C-ADR can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other insurance, Medicare, or other reimbursement sources for which the class member owes no reimbursement obligation. If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the Class Member for the out-of-pocket expenses up to a maximum of $35,000. (Dkt. 41 at 10, ¶ 10.)

The relief obtained is the only appropriate relief that is available under the law for the ERISA claims alleged. Where, as here, an insurer denies member claims for benefits under the wrong standard—embodied here in Anthem's categorical application of SURG.00055 to deny claims for 2C-ADR as "investigational" and "not medically necessary"—the appropriate remedy is not payment for all, but rather the reprocessing of the denied claims under the proper standard. *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) (reprocessing is appropriate injunctive relief for denial of plan benefits when an ERISA administrator applies the wrong standard to a benefit determination.) That is precisely the relief obtained here. Accordingly, this factor also weighs strongly in favor of approval.

### 5. Extent of discovery and state of proceedings, including the absence of collusion.

The extent of discovery completed and the state of the proceedings at the time of settlement is an indicator of whether the parties have a sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing. Typically, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomm. Coop.*, *supra*, 221 F.R.D. at 527 (internal quotation marks and citation omitted). For that reason, "[a] settlement

10

following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id*. at 528.

In January 2018—long before the parties reached settlement—the parties completed their initial disclosures. Bradford produced over seven hundred (700) pages of documents, including medical records, claim records and correspondence, insurance documents, and FDA documents and other evidence supportive of his position that 2C-ADR is safe and effective. (Dkt. 43-1 [Gianelli Dec. in support of fee motion] at ¶ 12.)

Bradford also served Defendants with a set of comprehensive production requests, seeking documentary information supportive of the denial of benefits and breach of fiduciary duty claims asserted in the Complaint (both of which are class claims). (*Id*. at ¶ 11.) Among other things, Plaintiff sought the relevant plan documents; all versions of SURG.00055 as it has existed during the class period; all documents and Electronically Stored Information ("ESI") showing how SURG.00055 was developed, researched, written, voted on, decided upon, approved, or implemented; all documents and ESI showing Defendants' processes for reviewing or determining 2C-ADR claims; form letters or template language relied upon by Defendants to deny 2C-ADR claims during the class period; the class data (number of denials, etc.); and the medical evidence supportive of Defendants' contention that 2C-ADR is "investigational" and "not medically necessary." (*Id*.)

In or about February of 2018, Plaintiff served special interrogatories requesting factual information concerning the various class certification elements and Defendants' development and implementation of SURG.00055. (*Id*. at ¶ 13.)

On or about March 5, 2018, Defendants responded to Plaintiff's production requests. Defendants asserted objections and took the position that they were under no obligation to produce any responsive documents beyond the "administrative record." Plaintiff initiated meet and confer efforts but the parties were unable to resolve their dispute. Accordingly, on April 18, 2018, Plaintiff sent a lengthy Joint

11

Stipulation to each Defendant setting forth Plaintiff's position that the "administrative record" limitation does not apply, and addressing each of Defendants' remaining objections to the production requests. (*Id.* at ¶ 14.)

The Joint Stipulations were not filed. In or about late April/early May of 2018, the parties agreed to table their discovery dispute with respect to the production requests, and to extend the time for responding to the special interrogatories, while they engaged in settlement negotiations. As part of these negotiations, the parties agreed to informally exchange information, including information pertinent to the class certification elements. (*Id.* at ¶ 15.)

The parties attended a mediation on May 30, 2018 before an experienced and well-respected mediator, Edwin Oster, Esq. of Judicate West. Following the mediation, the parties engaged in extensive negotiations through the mediator. (*Id.* at ¶ 16.)

Prior to the mediation, Bradford's counsel conducted their own investigation and evaluation of the relevant law and facts necessary to assess the strengths and weaknesses of the case. Class Counsel's evaluation was enabled by their experience in handling similar cases and through consultation with experts regarding 2C-ADR. (*Id.* at ¶ 17.)

After months of negotiation, the parties arrived at a settlement of this case that provides the Class with substantially all of the relief requested in the Complaint. (*Id.* at ¶ 18.) Given the robust exchange of information and the intense, arms-length negotiations that preceded the Settlement, the Settlement was reached after the parties achieved "a full understanding of the legal and factual issues surrounding the case," and represents the end-result of an adversarial process where the interests of the class were vigorously and fully represented by Class Counsel. *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 527.

"Nor is there any dispute that counsel had considerable experience in litigating … class actions, and other complex litigation." *Rodriguez v. West*

*Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Bradford and the Class are represented by counsel who have extensive experience in the litigation of insurance class actions and have successfully prosecuted other class actions over policyholders' rights to health benefits. (Dkt. 36-1 at ¶¶ 2-4; Dkt. 43-1 at ¶¶ 2-4.) Anthem is represented by the law firm of Reed Smith LLP, a firm that has expertise in health care matters and that regularly represents Anthem and other health plans.

The Ninth Circuit has held that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, this factor weighs in favor of approval.

### 6. Experience and views of counsel.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re TOYS "R" US-DELAWARE, INC.*, 295 F.R.D. 438, 455 (C.D. Cal. 2014). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

As set forth in the declarations submitted with the Preliminary Approval Motion and Fee Motion, Class Counsel has extensive experience prosecuting insurance class actions, and has represented policyholders such as Bradford in a number of published insurance law decisions. Class Counsel's belief that the proposed Settlement is fair, adequate and reasonable weighs in favor of approval.

### 7. The reaction of the Class has been overwhelmingly positive and strongly supports approval.

The parties have received only one request for exclusion and zero objections to the proposed Settlement. (Livingston Decl. at ¶¶ 12-13.) This is itself strong evidence of the Settlement's fairness. *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in

the class presents at least some objective positive commentary as to its fairness."); *See also*, *Ross v. A.H. Robins*, 700 F.Supp. 682, 684 (S.D.N.Y. 1988) ("[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement."). The overwhelmingly positive reaction of the Class Members is strong evidence that the Settlement is fundamentally fair, adequate and reasonable.

## IV. CONCLUSION

For all of the reasons set forth above, Bradford and the Class respectfully request that this Court issue an Order: (1) finding that the Class Notice has been adequate and reasonable, met the requirements of Rule 23, and has constituted the best notice practicable under the circumstances; (2) granting final approval of the Settlement; and (3) directing entry of Final Judgment, dismissing the Action (including all individual and class claims presented thereby) on the merits with prejudice.

DATED: April 19, 2019                                           GIANELLI & MORRIS

                                                      By:   /s/ Adrian J. Barrio
                                                            ROBERT S. GIANELLI
                                                            JOSHUA S. DAVIS
                                                            ADRIAN J. BARRIO
                                                            Attorneys for Plaintiff